UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
ALEXANDER ZASLAVSKIY, on behalf of himself and :
all others similarly situated,
                                                 :
                                                 :
                           Plaintiff,            :     REPORT &
                                                 :     RECOMMENDATION
        -against-                                :     18-CV-4747 (DLI) (SMG)
                                                 :
WELTMAN, WEINBERG & REIS CO., LPA,               :
                                                 :
                           Defendant.            :
                                                 :
-----------------------------------------------------------------------x
STEVEN M. GOLD, U.S. Magistrate Judge:

## INTRODUCTION

Plaintiff Alexander Zaslavskiy brings this class action on behalf of himself and all others

similarly situated, alleging that defendant Weltman, Weinberg & Reis Co., LPA violated the Fair

Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, by sending plaintiff

collection communications that suggested, but did not clearly state, that the amount of the debt

was increasing.  Am. Compl. ¶¶ 31–35, Dkt. 7.  The parties, having reached a proposed class

action settlement, now move for an Order granting preliminary approval of the settlement as set

forth in the Class Settlement Agreement and Release (the "Settlement Agreement"), directing

notice to the class, and setting dates for opt-outs, objections, and a hearing.  Mot. for Prelim.

Approval at 1, Dkt. 32.

The Honorable Dora L. Irizarry has referred the parties' joint motion for preliminary

approval to me for report and recommendation.  Order dated Aug. 11, 2020.  After the motion

was referred, I issued two orders seeking supplemental briefing.  Orders dated Sept. 29, 2020,

and Oct. 12, 2020.  The parties submitted a Joint Supplemental Memorandum ("Supp. Mem.")

on October 9, 2020, Dkt. 34, and a second Joint Supplemental Memorandum ("Sec. Supp.

Mem.") on October 15, 2020, Dkt. 35.  Having considered the parties' submissions and for the reasons stated below, I respectfully recommend that the motion be granted.

## BACKGROUND

Plaintiff commenced this action on August 22, 2018, Compl., Dkt.1, and thereafter filed an Amended Complaint on December 5, 2018.  Plaintiff alleges that defendant mailed a letter to him in an attempt to collect "an alleged student loan debt" owed to Navient Credit Finance Corporation.  Am. Compl. ¶¶ 15, 16; *see* Ltr. dated July 25, 2018, Dkt. 7-1.  As relevant here, the letter provides:

> Balance Due as of 07/25/18: $2,716.32
>
> Account Charge-off Date: 02/28/17
> Total Amount Due at Charge-off: $2,421.19
> Total Interest Charged Since Charge-off: $287.69
> Total Charges and Fees Since Charge-off: $7.44
> Total Payment(s) Made Since Charge-off: $0.00

Ltr. dated July 25, 2018 at 1.  Plaintiff alleges that this letter violates 15 U.S.C. §§ 1692e, 1692e(2), 1692e(10) and 1692g, "in that it suggests that the amount of the debt is increasing with time, but does not clearly disclose whether this is the case."  Am. Compl. ¶ 31.  Plaintiff brings this claim on behalf of a class of individuals to whom defendant sent similar collection letters on or after December 5, 2017 and prior to December 26, 2018.  *Id.* ¶¶ 36–37; *see* Mot. for Prelim. Approval ¶ 6.

After the parties engaged in written discovery, the Court scheduled a settlement conference for February 20, 2020.  Min. Entry dated Jan. 29, 2020, Dkt. 24.  On the eve of the scheduled settlement conference, plaintiff filed a notice advising the Court that "the parties have reached a settlement on a classwide basis" and "anticipate filing a motion for preliminary approval of the [c]lass [s]ettlement within the next 45 days."  Not. of Settlement at 1, Dkt. 25.

2

Following several extensions of time, plaintiff filed the parties' joint motion for preliminary approval of the class action settlement on August 10, 2020.

The proposed settlement provides for a fund of $40,333.34 to cover a statewide class defined as:

> (a) all individuals with addresses in New York State (b) to whom defendant (c) sent a collection letter (d) attempting to collect a student loan allegedly owed to Navient Credit Finance Corporation (e) which included positive numbers for interest or other charges or fees (any of the three), (f) but did not positively disclose that the balance may increase due to interest and fees, (g) which letter was sent on or after December 5, 2017 and prior to December 26, 2018.

Mot. for Prelim. Approval ¶ 6; *see* Settlement Agreement ¶¶ 1.06, 2.01, Dkt. 32-1. Defendant represents that the class consists of 533 persons. Mot. for Prelim. Approval ¶ 6; *see* Settlement Agreement ¶ 1.06. Under the terms of the proposed Settlement Agreement, the fund is to be divided on a *pro rata* basis among the class members whose (1) Notice of Proposed Class Action Settlement ("Notice") is not returned as undeliverable; or whose (2) Notice is returned with a forwarding address to which the Notice is re-mailed and not returned as undeliverable. Settlement Agreement ¶ 2.01. Defendant will be solely responsible for the costs of the class notice and administration. *Id.* ¶ 2.02.

Plaintiff Zaslavskiy, in turn, is to be paid a total of $4,000 pursuant to the Settlement Agreement "for his actual and statutory damages and for his services as Class Representative." *Id.* ¶ 2.03. The Settlement Agreement further contemplates an award of attorneys' fees and costs of no more than $22,166.66, which class counsel will seek in a separate petition within 30 days after the Notice Date.[1] *Id.* ¶ 2.04. As such, the "aggregate settlement amount" under the Settlement Agreement is $66,500, which includes the service award to plaintiff, class counsel's

---

[1] The Notice Date is the date that Notice will be mailed to the class members. Settlement Agreement ¶ 1.18.

attorneys' fees, and the class settlement fund. *Id.* ¶ 2.05. The Settlement Agreement also contains a provision for a *cy pres* award to be given to The Legal Aid Society in the amount of the settlement checks that are returned, undeliverable, or remain uncashed for 90 days from the date upon which they were mailed to the class members. *Id.* ¶ 1.27.

The parties propose the following schedule: (1) defendant will cause to be mailed by first class mail the written Notice within 30 days of entry of the Preliminary Approval Order; (2) class counsel will have 30 days after the Notice Date to file their fee petition; (3) class members will have 60 days after the Notice Date to object to the settlement or to request to be excluded from the settlement; and (4) the parties will jointly request a Fairness Hearing date, which will be no more than 120 days after the date of entry of the Preliminary Approval Order. *Id.* ¶¶ 2.04, 4.01(c), 4.03(e), 4.06; *see* Mot. for Prelim. Approval at 4; Supp. Mem. at 1-2.

## DISCUSSION

### I.    Rule 23 Class Certification

Plaintiff moves pursuant to Federal Rule of Civil Procedure 23 for certification of the class set forth above, for purposes of settlement only. Mot. for Prelim. Approval ¶¶ 5, 6; Settlement Agreement ¶¶ 1.06, 4.01.

#### A. *Legal Standard*

A party seeking certification of a class must satisfy "the four prerequisites of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation." *Marisol A. v. Giuliani*, 126 F.3d 372, 375 (2d Cir. 1997). The Court must also find that one of the three sets of criteria set forth in Rule 23(b) has been met. *See id.* at 376; *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Here, plaintiff seeks to certify a class under Rule 23(b)(3), which permits class certification if "the court finds that the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of establishing each of these prerequisites to certification by a preponderance of the evidence. *See Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). In deciding whether a plaintiff has met this burden, "the Court may examine not only the pleadings but also the evidentiary record, including any affidavits and results of discovery." *Guadagna v. Zucker*, 332 F.R.D. 86, 91 (E.D.N.Y. 2019); *see also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 571 (2d Cir. 1982). At the same time, a district court may accept allegations in the complaint as true for purposes of deciding a class certification motion, *see Waggoner v. Barclays PLC*, 875 F.3d 79, 85 n.5 (2d Cir. 2017), and should refrain from conducting "a preliminary inquiry into the merits" of the case, *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177 (1974).

The Court's analysis of whether the relevant requirements of Rule 23 have been met must be "rigorous." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). Nevertheless, the Second Circuit has emphasized that Rule 23 should be given a "liberal rather than restrictive construction." *Marisol A.*, 126 F.3d at 377 (internal quotation marks and citation omitted). "[T]o deny a class action simply because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle would destroy much of the utility of Rule 23." *Cortigiano v. Oceanview Manor Home for Adults*, 227 F.R.D. 194, 203 (E.D.N.Y. 2005) (internal quotation marks and citation omitted). "Therefore, it seems beyond peradventure that the Second Circuit's general preference is for granting rather than denying class certification." *Id.* (internal quotation marks and citation omitted); *see also Hasemann v. Gerber Prod. Co.*, 331 F.R.D. 239, 254 (E.D.N.Y. 2019).

Moreover, pursuant to Rule 23(c)(1), "the court can make a conditional determination of whether an action should be maintained as a class action, subject to final approval at a later date." *Moukengeshcaie v. Eltman, Eltman & Cooper, P.C.*, 2019 WL 5204809, at *3 (E.D.N.Y. Oct. 15, 2019) (internal quotation marks and citation omitted). For purposes of settlement only, defendant does not oppose conditional certification. *See* Mem. in Supp. of Mot. for Prelim. Approval ("Pl.'s Mem.") at 4, Dkt. 33.

### B. The Requirements of Rule 23(a)

I address each of the prerequisites in Rule 23(a) in turn.

#### i.    Numerosity

In the Second Circuit, "numerosity is presumed at a level of 40 members." *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement," *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993), as "it is permissible for . . . court[s] to rely on reasonable inferences drawn from available facts," *Hill v. City of New York*, 2019 WL 1900503, at *5 (E.D.N.Y. Apr. 29, 2019) (internal quotation marks, alteration, and citation omitted). Here, defendant represents that there are 533 potential class members. Pl.'s Mem. at 4. Because the proposed class far exceeds the 40-member threshold, the numerosity requirement is satisfied.

#### ii.    Commonality

Rule 23(a)(2) requires that there be a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Notably, the "individual circumstances of the class members may

6

differ without precluding class certification," so long as there is "a common nucleus of operative facts or an issue that affects all members of the class." *Butto v. Collecto Inc.*, 290 F.R.D. 372, 392 (E.D.N.Y. 2013).

Here, the common contention that is "capable of classwide resolution" is whether certain characteristics common to debt collection letters sent by defendant to class members failed to conform to the requirements of the FDCPA. *Dukes*, 564 U.S. at 350; *see* Am. Compl. ¶ 41; Pl.'s Mem. at 5. As such, commonality is satisfied.

      iii.   <u>Typicality</u>

The typicality requirement under Rule 23(a)(3) is "satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Robidoux*, 987 F.2d at 936. "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Id.* at 936–37.

Here, the factual and legal theories underlying plaintiff's claims are the same as those of the proposed class. Specifically, plaintiff and the putative class members allege that they received the same or similar "collection communications from [d]efendant that did not clearly state that the amount of the debt was increasing." Pl.'s Mem. at 5. Accordingly, typicality is satisfied.

      iv.   <u>Adequacy of Representation</u>

"Determination of adequacy typically entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced[,] and able to conduct the litigation." *Cordes & Co. Fin. Servs., Inc. v.*

*A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (internal quotation marks and citation omitted).

Here, there is no indication that plaintiff has any interests that are antagonistic to or at odds with those of the putative class members.  Indeed, plaintiff seeks the same relief as all other putative class members—statutory damages for defendant's violation of the FDCPA. Furthermore, class counsel—Edelman Combs Latturner & Goodwin LLC and Cohen & Mizrahi LLP—are able, qualified, and experienced.  Specifically, the memorandum of law states that both firms have "extensive experience litigating consumer protection cases and have been appointed as class counsel in a number of cases," including *Mirzadjanyan v. Simm Associates, Inc.*, 18-CV-7174.  Pl.'s Mem. at 6.  Therefore, adequacy of representation is satisfied.

C.  *The Requirements of Rule 23(b)(3)*

As stated above, a class action may be maintained under Rule 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The Rule requires consideration of several factors:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*  Generally, the predominance requirement is satisfied where "resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Waggoner,* 875 F.3d at 93 (internal quotation marks

8

and citation omitted).  The superiority requirement is satisfied where "a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (internal quotation marks and citation omitted).

Here, common factual allegations and a common legal theory predominate over any issues affecting only individual consumers.  Additionally, class adjudication of this case is superior to individual adjudication because "the individual [c]lass [m]embers' alleged damages may be relatively small [and thus] the expense and burden of individual litigation would make it impossible for all of the [c]lass [m]embers to individually redress the alleged harm done to them." *Moukengeshcaie*, 2019 WL 5204809, at *6.  Finally, proceeding as a class will conserve judicial resources and is more efficient for individual class members, particularly those who lack the resources to bring their claims individually.  Therefore, Rule 23(b)(3) is satisfied.

Accordingly, class certification for purposes of settlement is appropriate in this case.

## II.    Preliminary Approval of the Class Settlement

Plaintiff seeks preliminary approval of the proposed settlement, as memorialized in the Settlement Agreement.

### A.  Legal Standard

The Court may approve a class action settlement only upon a finding that the settlement is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2); *see Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000).  Preliminary approval is the first step in the settlement process and "requires only an initial evaluation of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties." *Clark v. Ecolab, Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citation

omitted); *see Hernandez v. Merrill Lynch & Co.*, 2012 WL 5862749, at *1 (S.D.N.Y. Nov. 15, 2012).  Final approval occurs when "notice of a hearing is given to the class members, where class members and settling parties are provided the opportunity to be heard on the question of final court approval." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 2016 WL 7625708, at *2 (S.D.N.Y. Dec. 21, 2016).  "Even at the preliminary approval stage, the Court's role in reviewing the proposed settlement is demanding because the adversariness of litigation is often lost after the agreement to settle." *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (internal quotation marks and citation omitted).

Amendments to Rule 23 became effective on December 1, 2018.  "Prior to the amendments, Rule 23 did not specify standards for courts to follow when deciding whether to grant preliminary approval"; rather, "courts in the Second Circuit interpreted Rule 23 to require a determination of whether the proposed settlement fell within the range of possible final approval." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019) (internal quotation marks and citation omitted); *see In re Traffic Exec. Ass'n*, 627 F.2d 631, 634 (2d Cir. 1980) (suggesting that for preliminary approval, a court need only find "probable cause to submit the [notice of settlement] to class members" (internal quotation marks and citation omitted)).  Under the new, more exacting standard required by Rule 23(e), district courts, in determining whether to grant preliminary approval of a proposed settlement, must decide whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i–ii).

B. *Preliminary Approval Factors*

Rule 23(e)(2), as amended in 2018, requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Prior to 2018, Rule 23(e)(2) set forth no factors, and courts in the

Second Circuit instead determined whether a proposed settlement was substantively fair by

considering what have come to be known as the *Grinnell* factors, which are:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citing *City of Detroit v.*

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). The Advisory Committee Notes to the 2018

amendments indicate that the new Rule 23(e) factors were not intended to "displace any factor"

under the *Grinnell* test. 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2); *see In re*

*GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 692. Accordingly, both sets of factors are

considered below.

i.    Adequate Representation by Class Representative and Class Counsel

For the reasons set forth in Section I.B.iv, *supra*, the Court will likely find that plaintiff and class counsel have provided adequate representation to the Rule 23(b)(3) putative class. This factor accordingly weighs in factor of granting preliminary approval.

ii.    Arm's-Length Negotiations

The Second Circuit has recognized that there is a presumption of fairness, reasonableness, and adequacy as to a class action settlement where it is "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted). "Such a presumption is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'" *McReynolds*, 588 F.3d at 803 (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116).

Here, the parties, through experienced, capable counsel as described above, engaged in written discovery during the early stages of this litigation, which, according to plaintiff, "provided sufficient information concerning the parties, the claims and defenses, the class[,] and the [d]efendant's net worth." Pl.'s Mem. at 12. It thus appears that the parties engaged in arm's-length negotiations resulting in a proposed settlement that is procedurally fair and reasonable and not the result of any collusion. Rule 23(e)(2)(B) thus weighs in favor of preliminary approval.

iii.    Adequate Relief for the Class

Rule 23(e)(2)(C) requires courts to consider whether the relief provided for the class is adequate. Absent a showing of actual damages, the maximum recovery in a class action suit brought under the FDCPA is the lesser of $500,000 or one percent of the defendant's net worth, plus attorney's fees and costs. 15 U.S.C. § 1692k(a)(2)(B). One percent of defendant's net

12

worth in this case is $82,599.14.  Sec. Supp. Mem. at 1.  Accordingly, the settlement fund of $40,333.34 is slightly less than half of what the class could recover if they prevailed at trial, which of course might not occur.  In addition, plaintiffs might well not recover the maximum amount of statutory damages even if they did prevail at trial, which is of course not certain. Plaintiffs refer to one unreported case where a jury trial on damages resulted in an award of seventy percent of the maximum recoverable damages, which resulted in each class member receiving only five dollars.  Supp. Mem. at 4.  Here, in contrast, each class member will recover approximately $75.67.  *Id.*  Finally, to the extent settlement payments in FDCPA cases should be evaluated with respect to whether they incentivize compliance with the statute by collection agencies, it bears noting that the total amount to be paid by defendant, including attorney's fees, is a significant sum, and any settlement checks returned as undeliverable or that remain uncashed for 90 days after distribution will not revert to defendant but instead will be donated as a *cy pres* award to The Legal Aid Society.  Settlement Agreement ¶ 1.27.

As set forth above, when assessing the adequacy of relief to the class, the Court must also consider

> (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2).  This inquiry overlaps with a number of *Grinnell* factors, as described below.

### a. Costs, Risks, and Delay of Trial and Appeal

The first subfactor—the costs, risks, and delay of trial and appeal—overlaps with the following *Grinnell* factors: (1) complexity, expense, and likely duration of the litigation; (2) the risks of establishing liability; (3) the risks of establishing damages; and (4) the risks of maintaining the class through the trial. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.

Here, as an initial matter, the parties have spent two years litigating this case, much of which was devoted to settlement negotiations. Although the issues in the case are straightforward, class size is large and it is likely that substantial additional time would be required to litigate this action to conclusion. *See Garland v. Cohen & Krassner*, 2011 WL 6010211, at *7 (E.D.N.Y. Nov. 29, 2011) (Although "[t]he factual and legal issues in this case are not complex[, g]iven the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense."). As such, by reaching a settlement, plaintiff and the putative class members will avoid significant expense and delay. Thus, the *Grinnell* factor involving complexity, expense, and likely duration of the litigation weighs in favor of preliminary approval.

With respect to the other *Grinnell* factors relevant here, plaintiff alleges that "[b]oth parties recognized that there were risks and costs associated with further litigation" so that, "[i]n order to avoid the uncertainty presented by litigation, the parties agreed to settle the dispute between them." Pl.'s Mem. at 17. Indeed, although plaintiff's attorneys have expressed confidence in the merits of his claims, defendant has not admitted or conceded liability. Accordingly, if this case were to proceed to trial, defense counsel would likely oppose class certification, "pursue all potential defenses[,] and raise multiple issues in the course of the

litigation, making the outcome of plaintiff['s] claims uncertain." *Moukengeshcaie*, 2019 WL 5204809, at *9; *see Garland*, 2011 WL 6010211, at *8 (*Grinnell* factor involving the risks of maintaining a class through trial weighs in favor of settlement where "it is likely that defendants would oppose class certification"). For these reasons, I find that the *Grinnell* factors involving the risks of establishing liability and damages and of maintaining the class through the trial weigh in favor of granting preliminary approval.

### b. Effectiveness of the Proposed Method of Distributing Relief

The Settlement Agreement provides for checks to be distributed *pro rata* from the class settlement fund and mailed to class members whose (1) Notice is not returned as undeliverable; or (2) Notice is returned with a forwarding address to which the Notice is re-mailed and not returned as undeliverable. Settlement Agreement ¶¶ 1.27, 2.01. Because the proposed class consists of individuals who received a debt collection letter between December 2017 and December 2018, plaintiff represents that "it is very likely that [defendant] will have current addresses for the vast majority of the class members" and that "[a]ny class members who have recently moved will have a forwarding address on file with the U.S. Postal Service." Pl.'s Mem. at 13. Moreover, the proposed settlement does not require any claims processing because the class members are not required to submit a claim form in order receive a settlement check. *Id.*; *see* Proposed Notice at 2, Dkt. 32-2 ("You don't need to do anything in order to receive a cash payment from the Settlement Fund."). Therefore, I find this subfactor weighs in favor of granting preliminary approval.

### c.  The Terms of Any Proposed Award of Attorneys' Fees

Class counsel represent that they will seek no more than $22,166.66 in attorneys' fees. Pl.'s Mem. at 13.  The Settlement Agreement provides that class counsel will file their fee petition within 30 days after the Notice is mailed to the putative class members and that defendant will not oppose the petition.  Settlement Agreement ¶ 2.04.   The fee amount in the settlement agreement is less than what counsel calculates as the lodestar, even without a multiplier.  *See* Billing Records, Supp. Mem. Ex. A, Dkt. 34-1.  Moreover, any attorneys' fees will be paid only after the Court grants final approval of the settlement, including any fee award. *Id.*  Finally, any fees awarded will be separate and apart from the class settlement fund of $40,333.34 to be distributed to class members or the $4,000 to be paid to the class representative. *Id.* ¶¶ 1.04, 2.05.  I find that the proposed award of attorneys' fees seems reasonable in light of the activity reflected in the Court's docket for this action, including the negotiation of the class settlement and preparation of the pending motion for preliminary approval.  Accordingly, the amount of the fees sought does not weigh against approval at this preliminary stage.

### d.  The Terms of Any Proposed Service Award

Named plaintiff Zaslavskiy seeks approval of an award of $4,000 for his actual and statutory damages and for his service as class representative.  Pl.'s Mem. at 8.  This award is approximately six percent of the "aggregate settlement amount" of $66,500.  Settlement Agreement ¶ 2.05.

"It is within the court's discretion to determine whether a named plaintiff should receive an additional service or incentive award."  *Gay v. Tri-Wire Eng'g Sols., Inc.*, 2014 WL 28640, at *13 (E.D.N.Y. Jan. 2, 2014).  An "incentive" or "service" award is not uncommon in class action cases and is "meant to compensate the named plaintiff for any personal risk incurred by the

16

individual or any additional effort expended by the individual for the benefit of the lawsuit." *In re Nissan Radiator/Transmission Cooler Litig.*, 2013 WL 4080946, at *15 (S.D.N.Y. May 30, 2013) (internal quotation marks and citation omitted). "Courts look for the existence of special circumstances when determining whether an award is justified and, if so, in what amount." *Torres v. Toback, Bernstein & Reiss LLP*, 2014 WL 1330957, at *3 (E.D.N.Y. Mar. 31, 2014) (internal quotation marks and citation omitted). Such special circumstances include:

> the personal risk (if any) incurred by the plaintiff-applicant in becoming and continuing as a litigant, the time and effort expended by that plaintiff in assisting in the prosecution of the litigation or in bringing to bear added value (e.g., factual expertise), any other burdens sustained by that plaintiff in lending himself or herself to the prosecution of the claim, and of course, the ultimate recovery.

*Id.* (internal citation omitted); *see Babcock v. C. Tech Collections, Inc.*, 2017 WL 1155767, at *9 (E.D.N.Y. Mar. 27, 2017).

Here, plaintiff explains that the award sought in this case is appropriate because he "lent his name to the litigation, responded to discovery[,] and participated in the settlement process to obtain a recovery for the absent class members." Pl.'s Mem. at 8. Moreover, the award is separate from the class settlement fund and thus will not reduce the amount of funds available to the class as a whole. However, even after the Court sought additional information, plaintiff has not shown that he incurred out-of-pocket expenses or devoted a significant amount of time on tasks related to this litigation, particularly since he was not deposed. Moreover, the proposed $4,000 award is "multiples of the $1,000 maximum statutory damages" that plaintiff could have recovered had he brought an individual action, *Babcock*, 2017 WL 1155767, at *9, and seems "grossly disproportionate" to the compensation for absent class members of approximately $75.67 each. *Torres*, 2014 WL 1330957, at *4. Nevertheless, a service award in some amount is appropriate since the named plaintiff did make some contributions to a successful class action

suit. Therefore, unless the parties make a showing of why a greater amount is appropriate upon final approval, it may be appropriate at the time the Court considers whether to grant final approval to reduce the service award and shift some of the $4,000 to the settlement fund to be distributed to the members of the class. *See Babcock*, 2017 WL 1155767, at *9 (reducing proposed service awards to named plaintiffs in FDCPA action). The amount of the service award is not so substantial, however, to warrant denying preliminary approval at this stage of the process.

### e. Any Agreement Required to be Identified under Rule 23(e)(3)

There is no agreement under Rule 23(e)(3) that the Court must review in this case. However, analysis of the release set forth in section 3.01 of the Settlement Agreement will assist the Court in determining whether relief is adequate for the class, even if such an analysis is not an explicit Rule 23(e)(2) or *Grinnell* factor.

"The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct." *Wal-Mart Stores, Inc.*, 396 F.3d at 107 (internal quotation marks and citation omitted). Nevertheless, "[c]ourts have denied preliminary approval where releases from liability are deemed to be overly broad." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 43.

Here, the release is limited to claims "that were alleged or that could have been alleged in the [a]ction that relate to or arise out of [d]efendant's collection or attempted collection of debt as alleged in the [a]ction." Settlement Agreement ¶ 3.01. The release specifically excludes "any claims or defenses relating to (1) whether or not any debt is owed, (2) the proper crediting of payments[,] and (3) the accurate reporting of the alleged debt to the credit reporting bureaus."

18

*Id.* As such, it does not appear that the release is overly broad. Moreover, class members who prefer to preserve their legal claims and not be subject to the release or the Settlement Agreement in its entirety may request exclusion from the class within 60 days after the Notice mailing date. *Id.* ¶ 2.07. Because the release is narrowly tailored and the Settlement Agreement provides a reasonable method by which class members may exclude themselves, I find this subfactor weighs in favor of granting preliminary approval.

Overall, based on the four subfactors described above, the Court will likely find that the relief provided in the Settlement Agreement is adequate.

iv.    Equitable Treatment of Class Members Relative to One Another

Questions to consider under this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

Here, the class members will be treated equitably under the proposed plan of distribution, as they will each receive a *pro rata* share of the recovery. Settlement Agreement ¶ 2.01; *see Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding that a *pro rata* allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"). Moreover, and particularly in a case where any recovery would consist of statutory damages, there is no reason to believe that any class member would likely recover more than any other if the claims of class members were adjudicated individually.

v.    Grinnell Factors Not Otherwise Addressed Above[2]

---

[2] The Court does not, of course, have any information about the second *Grinnell* factor—the reaction of the class to the settlement—at this time.

As stated above, the third *Grinnell* factor asks the Court to consider the stage of the proceedings and the amount of discovery completed. The relevant inquiry "is whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Here, the parties obtained information concerning "the claims, the class[,] and the [d]efendant's net worth during [formal written] discovery." Pl.'s Mem. at 17. Although the parties did not engage in more extensive discovery, including depositions, the information that was gathered by the parties was sufficient to negotiate a reasonable resolution of this lawsuit, in which a statutory formula for recoverable damages applies.

The seventh, eighth, and ninth *Grinnell* factors ask the Court to consider the ability of defendant to withstand a greater judgment and the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation. Here, the Settlement Agreement provides that the class fund will be $40,333.34, which, according to plaintiff's counsel, is "based on defendant's net worth and the nature of the FDCPA violation." Pl.'s Mem. at 17. "Assuming that Notice is successfully delivered to each class member," plaintiff's counsel contend, "each class member will receive $75.67 from the class settlement fund." *Id.* Although plaintiff's counsel believe that plaintiff and the class have "strong claims and arguments in support of a maximum statutory award" and there is no indication that defendant could not withstand a greater judgment, *id.*, they also recognize the inherent risks of proceeding in this case. Moreover, even though the class could possibly achieve a greater recovery at trial, this fact "is not dispositive and does not preclude the [C]ourt from finding that the settlement is within a 'range of reasonableness' that is appropriate for approval." *In re Luxottica Group S.p.A. Sec.*

20

*Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006).  As discussed above, the proposed settlement here is within the range of reasonableness, as it provides a meaningful benefit to the class and disincentivizes defendant from committing future statutory violations.  Accordingly, the above-referenced *Grinnell* factors weigh in favor of granting preliminary approval.

In sum, under both the Rule 23(e)(2) factors and the *Grinnell* factors, I respectfully recommend that preliminary approval be granted because the Court, upon final approval, will likely find that the Settlement Agreement is fair, reasonable, and adequate.

## III.    The Proposed Notice of Settlement

"Once preliminary approval is bestowed, the second step of the process ensues; notice is given to the class members of a hearing, at which time class members and the settling parties may be heard with respect to final court approval."  *American Med. Ass'n v. United Healthcare Corp.*, 2009 WL 1437819, at *3 (S.D.N.Y. May 19, 2009).  Rule 23(e) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal."  Fed. R. Civ. P. 23(e)(1)(B).  "[U]pon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)," the Court "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B); *see Eisen*, 417 U.S. at 176.

A class notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

21

Fed. R. Civ. P. 23(c)(2)(B).  "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores, Inc.*, 396 F.3d at 113.

Here, the Notice will be mailed to each potential member of the class, which defendant represents is 533 individuals.  Pl.'s Mem. at  4.  Defendant should have little difficulty identifying these class members and finding recent addresses for each of them, as the class is described as:

> (a) all individuals with addresses in New York State (b) to whom defendant (c) sent a collection letter (d) attempting to collect a student loan allegedly owed to Navient Credit Finance Corporation (e) which included positive numbers for interest or other charges or fees (any of the three), (f) but did not positively disclose that the balance may increase due to interest and fees, (g) which letter was sent on or after December 5, 2017 and prior to December 26, 2018.

Settlement Agreement ¶ 1.06.  Moreover, the substance of the Notice satisfies each of the requirements under Rule 23(c)(2)(B).  Thus, because the Proposed Notice is reasonable and constitutes "the best notice that is practicable under the circumstances," I respectfully recommend that the Court approve the Proposed Notice.

CONCLUSION

For the reasons stated above, I respectfully recommend that the Court certify the class as defined above and preliminarily approve the proposed settlement.  I further recommend that the Court order that Edelman Combs Latturner & Goodwin LLC and Cohen & Mizrahi LLP be appointed as class counsel and that the Proposed Notice be approved and distributed to the class.

Any objections to the recommendations made in this Report must be made within fourteen days after filing of this Report and Recommendation and, in any event, on or before November 2, 2020.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Failure to file timely

objections may waive the right to appeal the District Court's order. *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989) (discussing waiver under the former ten-day limit).

_____

/s/

Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
October 19, 2020

U:\#JAV 2019-2020\Zaslavskiy v. Weltman, Weinberg & Reis Co., LPA 18-CV-4747\R&R JAV FINAL USE.docx