# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 18-CV-4747 (DLI) (RER)

———————————

ALEXANDER ZASLAVSKIY, ON BEHALF OF HIMSELF AND
ALL OTHERS SIMILARLY SITUATED,

Plaintiff,

VERSUS

# WELTMAN, WEINBERG & REIS CO., LPA,

Defendant.

———————————

**REPORT & RECOMMENDATION**

January 5, 2022

———————————

**TO THE HONORABLE DORA L. IRIZARRY
SENIOR UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

Plaintiff Alexander Zaslavskiy ("Plaintiff" or "Zaslavskiy") brings this class action on behalf of himself and all others similarly situated, alleging that defendant Weltman, Weinberg & Reis Co., LPA ("Defendant") violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, by sending Plaintiff debt collection communications that suggested, but did not clearly state, that the amount of the debt was increasing. (Dkt. No. 7 ("Am. Compl.") at ¶¶ 31–35). Before the Court is Plaintiff's motion for final approval of a class action settlement and award of class counsel fees and costs. (Dkt. Nos. 42-43.)[1] Your Honor has referred Plaintiff's motion to me

---

[1] Pursuant to the schedule set by Magistrate Judge Gold, Plaintiff first moved for an award of attorney's fees and costs. (Mem. for Att'y Fees, "Petition for, and Memorandum in Support of, an Award of Class Counsel's Fees and Costs.").

for a report and recommendation. For the following reasons, I respectfully recommend that Plaintiff's motion be granted, subject to the reduction of the service fee award and attorney's fees discussed herein.

## **BACKGROUND**

For the sake of brevity and given Your Honor's thorough familiarity with this case, I will dispense with a protracted discussion of the facts. As Your Honor will recall, on December 1, 2020, the Court adopted in its entirety the "thorough, detailed, and well-reasoned" report from the Honorable Steven M. Gold, United States Magistrate Judge (Dkt. No. 36 ("Report")), which recommended that Plaintiff's motion for preliminary approval of the class action settlement be granted, and that the Court: (1) certify the class as defined, (2) preliminarily approve the proposed settlement, (3) appoint Edelman Combs Latturner & Goodwin LLC and Cohen & Mizrahi LLP as class counsel, and (4) approve distribution of the proposed notice to the class. (Order dated 12/1/20.) Based on Your Honor's adoption of Magistrate Judge Gold's report and recommendation, on February 4, 2021 I signed a formal written order preliminarily approving the settlement. (Dkt. No. 40.) That order, *inter alia*, set dates for distribution of the class notice, for filing objections to the class settlement, and for a telephonic fairness hearing on June 10, 2020. (*Id.*)

Following distribution of notice to the class and the expiration of the period for submission of objections, Plaintiff filed the instant motion for final approval of the settlement. (Dkt. Nos. 42-43.)

---

After Your Honor referred that motion to me for a report and recommendation, Plaintiff subsequently filed a separate memorandum of law entitled "Memorandum in Support of Motion for Final Approval of the Class Action Settlement." (Dkt. No. 43). I will address both motions collectively as seeking final approval of the class action settlement and an award of counsel fees and costs, which is consistent with Plaintiff prior motion for preliminary approval of the settlement.

In the motion, Plaintiff notes that notices were mailed to 553 class members, forty-three notices were returned as undeliverable and with no forwarding information, and that no class members submitted opt out forms or filed objections to the settlement. (Dkt. No. 43 ("Mem. for Final Approval")at 1-2, 4). The proposed final settlement, which is identical to the preliminarily approved settlement, in notable part, provides for:

1.  A settlement fund of $40,333.34 to be distributed equally among the 510 class members whose notices were successfully mailed. Each class member will receive a check for $79.08;

2.  A payment of $4,000.00 to Zaslavskiy, separate and apart from the settlement fund, for his actual and statutory damages, and for his service as named class representative;

3.  A *cy pres* award to the Legal Aid Society in an amount equal to the checks not cashed or deposited by class members within the required period – ninety days after mailing;[2] and

4.  A payment of $22,166.66 to class counsel, separate and apart from the settlement fund, for attorney's fees and costs.

(Mem. for Final Approval-1, Appendix D ("Final Approval Order")). On June 10, 2021, the undersigned held the telephonic fairness hearing at which no class member attended.

## DISCUSSION

I.    Class Action Approval Standards

"Before approving a class settlement [], a district court must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied." *In re Am. Intern. Grp., Inc. Sec. Litig.*, 689 F.3d 229, 238 (2d Cir. 2012) (quoting *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 341 (3d Cir.2010)). "[T]he court must assess whether the proposed class satisfies Rule 23(a)'s four threshold requirements": (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. *Id.* (citing Fed. R. Civ. P. 23(a).) "The district court must also

---

[2] Class members have ninety days in which to cash their settlement checks.  Thereafter the checks are void.

determine whether the action can be maintained under Rule 23(b)(1), (2), or (3)." *Id*. Rule 23(b)(3), applicable in this case, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members," and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

A class action settlement may be approved only upon a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Rule 23(e)(2), as amended in 2018, requires courts to consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Prior to 2018, Rule 23(e)(2) set forth no factors for settlement approval, and courts in the Second Circuit instead determined whether a proposed settlement was substantively fair by considering what are known as the *Grinnell* factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*McReynolds v. Richards-Cantave*, 588 F.3d 790, 804 (2d Cir. 2009) (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds*, *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)). The Advisory Committee Notes to the 2018

4

amendments indicate that the Rule 23(e) factors were not intended to "displace any factor" under the *Grinnell* test.  2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2); *see In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y 2019).  Accordingly, courts in this Circuit consider both sets of factors in determining whether to approve a class action settlement. *E.g.*, *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).

II.    Application

A.    The Requirements for Class Certification Are Satisfied

As Magistrate Judge Gold noted in his Report, the Rule 23(a) and (b) requirements for class certification are satisfied.

1.    Rule 23(a) – Numerosity, Commonality, Typicality and Adequacy

With over 500 class members, there is numerosity. *E.g., Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members") *see also* Report at 6. As the issue of whether common aspects of the debt collection letters Defendant sent to class members failed to conform to the FDCPA is "capable of classwide resolution," the commonality requirement is met. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (Rule 23(a)(2) requires a common contention that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."); *see also* Report at 6-7. Typicality is satisfied because the factual and legal theories underlying Plaintiff's claims are the same as those of the class – they all received the same or similar collection letter from Defendant that allegedly violated the FDCPA. *Robidoux v. Celani*, 987 F.2d 931, 936 (2d Cir. 1993) (typicality "satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to

prove the defendant's liability."); *see also* Report at 7. Adequacy of representation is satisfied as Plaintiff seeks the same relief as all other class members—statutory damages for Defendant's violation of the FDCPA—and there is no indication that Plaintiff has any interests that are antagonistic to those of the class. *See* Report at 7-8. Furthermore, class counsel are able, qualified, and experienced, with extensive experience litigating consumer protection cases, including as class counsel. *Bafa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) (determination of adequacy of representation "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation.") (citing *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).

## 2. Rule 23(b)(3) – Predominance and Superiority

Predominance is satisfied here because resolution of the common factual and legal questions of whether the letters violated the FDCPA is subject to generalized proof and predominate over any issues affecting only individual class members. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 55 (E.D.N.Y. 2019) (predominance "satisfied 'if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof.'") (quoting *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015)); *see also* Report at 8-9.

Class adjudication of the claims is superior to other forms of litigation because it will allow for uniform resolution of the legal and factual issues, achieve judicial economy, convenience and fairness to all parties, and an enormous amount of time and expense will be saved by permitting the class to settle their relatively small individual claims as a whole instead of forcing each of these

consumers to maintain their own individual lawsuits. *Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) (superiority satisfied where "class action would achieve economies of time, effort, and expense, and promote uniformity of decision . . . without sacrificing procedural fairness or bringing about other undesirable results.") (internal quotation marks and citation omitted); *Moukengeshcaie v. Eltman*, No. 14-CV-7539 (MKB) (CLP), 2019 U.S. Dist. LEXIS 182337, at *6 (E.D.N.Y. Oct. 15, 2019) (superiority evident where "the individual [c]lass [m]embers' alleged damages may be relatively small [and thus] the expense and burden of individual litigation would make it impossible for all of the [c]lass [m]embers to individually redress the alleged harm done to them."); *see also* Report 8-9.

B.  The Settlement Should Be Granted Final Approval

Whether to grant preliminary or final approval of a class action settlement is determined by examining the same criteria – those found in Rule 23(e)(2). Indeed, in granting preliminary approval the court examines such factors and determines whether it will likely grant final settlement approval under Rule 23(e)(2). *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 n. 21 (E.D.N.Y. 2019) (citing Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement *will likely earn final approval after notice and an opportunity to object*." (emphasis added)).

In his Report, Judge Gold thoroughly and rigorously analyzed the settlement and explained in detail why it should be preliminarily approved under Rule 23(e)—why it was likely that the

settlement would be granted final approval.[3] Your Honor adopted Judge Gold's Report in full, noting it was "thorough, detailed, and well-reasoned." (Order dated 12/1/20). The final settlement is the same as preliminarily proposed, and no class members opted out of, or objected to the settlement. In that regard, nothing has changed, and the Court would be well within its discretion to grant final approval without much additional analysis. Nevertheless, and because there were two minor aspects of the preliminary settlement to which Judge Gold raised questions, I will address each of the factors in turn, even if briefly. Despite the relatively brief analysis, suffice it to say that I have reviewed all the submissions, both for preliminary and final approval, and agree that the final settlement should be approved under Rule 23(e)(2).

### 1.  Adequate Representation by Class Representative and Class Counsel

There is no question here that adequacy of representation is satisfied. As discussed above, (Point II.A.1), Plaintiff seeks the same relief as all other class members—statutory damages for Defendant's violation of the FDCPA—and there is no indication whatsoever that Plaintiff has any interests that are antagonistic to those of the class. Further, class counsel are capable, qualified, and experienced in litigating consumer cases, including as class counsel. Rule 23(e)(2)(A) is satisfied.

### 2.  Arm's-Length Negotiations

There is a presumption of fairness, reasonableness, and adequacy of class action settlements "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotation marks and citation omitted); *see also McReynolds*, 588 F.3d at 803 ("Such a

---

[3] The Court's analysis of whether the relevant requirements of Rule 23 have been met must be "rigorous." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

presumption is consistent with the 'strong judicial policy in favor of settlements, particularly in the class action context.'" (quoting *Wal-Mart Stores, Inc.*, 396 F.3d at 116)).

Here, with the assistance of experienced and capable counsel, the parties litigated this case for well over three years, engaging in written discovery, including a motion to compel depositions. This discovery provided sufficient information concerning the parties, the claims and defenses, the class, and the Defendant's net worth from which an appropriate settlement could be negotiated. In addition, litigation risk existed as Defendant proffered a possible defense – bona fide error defense – that if successful would result in no recovery for the class. It thus appears that the parties engaged in arm's-length negotiations resulting in a settlement that is procedurally fair and reasonable and not the result of any collusion.  Rule 23(e)(2)(B) thus weighs in favor of approval.

### 3.   Adequate Relief for the Class

Rule 23(e)(2)(C) requires courts to consider whether the relief provided for the class is adequate. In determining the adequacy of the relief, "the question for the Court is not whether the settlement represent the highest recovery possible . . . but whether it represents a reasonable one in light of the many uncertainties the class faces." *Graff v. United Collection Bureau, Inc.*, 132 F. Supp. 3d 470, 479-80 (E.D.N.Y. 2016) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 119 (2d Cir. 2005)).

Absent a showing of actual damages, the maximum recovery in a class action suit brought under the FDCPA is the lesser of $500,000 or one percent of the defendant's net worth, plus attorney's fees and costs.  15 U.S.C. § 1692k(a)(2)(B). Here, one percent of defendant's net worth is $82,599.14.[4] (Dkt. No. 35 at 1). Accordingly, the proposed settlement fund of $40,333.34 (*id.*)

---

[4] The parties clarified that Defendant's net worth is $8,259,914 (Dkt. No. 35 at 1), not $82,599.14 as they originally claimed. (Dkt. No. 34 at 4). The original figure is equal to one percent of Defendant's networth, which is the maximum recovery under the FDCPA. 15 U.S.C. § 1692k(a)(2)(B).

is slightly less than half of what the class could recover if they prevailed at trial, which of course might not occur. Further, even if Plaintiffs did prevail at trial, it is unclear whether they would recover the maximum number of statutory damages. In contrast, under the terms of the settlement agreement, each class member will recover approximately $79.

When addressing the adequacy of the relief, Rule 23(e)(2) requires the Court to take into account: (1) the costs, risks, and delay of trial and appeal; (2) the effectiveness of any proposed method of distributing relief to the class . . .; (3) the terms of any proposed award of attorney's fees . . .; and (4) any agreement required to be identified under Rule 23(e)(3).[5]

### a.   The Costs, Risks, and Delay of Trial and Appeal

As Judge Gold explained in his Report and Recommendation, the parties have now spent over three years litigating this case, with much of that time devoted to settlement negotiations. (Report at 14). Although the issues in this case are relatively straightforward, the class size is large, and it is likely that a substantial amount of additional time would be needed to litigate this action to conclusion. *See Garland v. Cohen & Krassner*, No. 08-CV-4626 (KAM) (RLM), 2011 U.S. Dist. LEXIS 136622, at *7 (E.D.N.Y. Nov. 29, 2011) (although "[t]he factual and legal issues in this case are not complex[, g]iven the complexity of any class action lawsuit . . . it is reasonable to assume that absent the instant Settlement, continued litigation would have required extensive time and expense.").

---

[5] These factors overlap with several *Grinnell* factors, including: the first (the complexity, expense and likely duration of the litigation); fourth (the risks of establishing liability); fifth (the risks of establishing damages); and sixth (the risks of maintaining the class through the trial).

Furthermore, Defendant "has not admitted or conceded liability" (Report at 14; Dkt. No. 32 at 1), therefore, Plaintiff would need to overcome "several hurdles" to obtain a favorable outcome. *Mikhlin v. Oasmia Pharm. Ab*, No. 19-CV-4349 (NGG) (RER), 2021 U.S. Dist. LEXIS 66719, at *15 (E.D.N.Y. Jan. 6, 2021). For example, Plaintiff would need to successfully oppose any dispositive motions; succeed at trial, where defense counsel would pursue all potential defenses; and then win any subsequent appeals. *Id*.; *see also Moukengeshcaie*, 2019 U.S. Dist. LEXIS 182337, at *20-21 ("the defendants have been well represented by highly competent counsel who would likely pursue all potential defenses and raise multiple issues in the course of the litigation, making the outcome of plaintiffs' claims uncertain."). Accordingly, the costs, risks, and delay of trial and appeal weigh in favor of settlement.

b.  Effectiveness of the Proposed Method of Distributing Relief

"A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *In re Payment Card Interchange Gee & Merch. Disc. Antitrust Litig*., 330 F.R.D. 11, 40 (E.D.N.Y. 2019). "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely, it must be fair and adequate . . . . An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id*. (quoting *In re WorldCom, Inc. Sec. Litig*., 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)).

Here, the method for processing class-member claims is adequate. Under the terms of the settlement, each class-member will receive a check for approximately $79. (Mem. for Final Approval at 11). Such a pro rata allocation plan is rational, treats class members equitably, and "has the benefit of simplicity." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015). Additionally, the settlement does not require claims processing as the class members are

not required to submit a claim form to receive their share of the settlement. (Dkt. No. 33 at 13). Of the 553 notices mailed, only 43 were returned as undeliverable (Mem. for Final Approval at 1). This high ratio of successfully delivered mail suggests that the settlement funds will be distributed to individuals in an equitable way that is not unduly demanding or insufficient. *Padovano v. FedEx Ground Package Sys.*, No. 16-CV-17 (FPG), 2019 U.S. Dist. LEXIS 107092, at *13 (W.D.N.Y. June 10, 2019). Accordingly, this subfactor weighs in favor of settlement.

c.  The Terms of Any Proposed Award of Attorney's Fees

The Court separately discusses the proposed award of attorney's fees *infra* Point III.

d.  The Terms of Any Proposed Service Award

In his Report, Judge Gold raised concern regarding the requested service award for the named Plaintiff Zaslavskiy. (*See* Report at 16-18). These concerns, discussed in detail herein, warrant a reduction in the amount of the service award.

"Courts often grant named plaintiffs in class cases an enhanced award, either in the form of a flat fee of a multiplied amount of their share of the settlement fund." *Moukengeshcaie v. Eltman*, No. 14-CV-7539 (MKB) (CLP), 2020 U.S. Dist. LEXIS 17018, at *20 (E.D.N.Y. Apr. 21, 2020), *adopted by* 2020 U.S. Dist. LEXIS 187310 (Oct. 8, 2020). The purpose of this "service award" is to "compensate plaintiffs for the time and effort expanded in assisting in the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and other burdens sustained by plaintiffs." *Bitzko v. Weltman*, No. 17-CV-458 (BKS) (DJS), 2021 U.S. Dist. LEXIS 149596, at *24 (N.D.N.Y. Aug. 10, 2010) (quoting *Massiah v. MetroPlus Health Plan Inc.*, No. 11-CV-0569 (BMC), 2012 U.S. Dist. LEXIS 166383, at *22 (E.D.N.Y. Nov. 20, 2012)).

Service awards are discretionary, *Gortat v. Capabla Bros*., 949 F. Supp. 2d 374, 378 (E.D.N.Y. 2013), and "[c]ourts look for the existence of special circumstances when determining whether an award is justified, and, if so, in what amount." *Babcock v. C. Tech Collection, Inc*., No. 14-CV-3576 (MDG), 2017 U.S. Dist. LEXIS 44548, at *21 (E.D.N.Y. Mar. 27, 2017) (quoting *Torres v. Toback, Bernstein, Reiss LLP*, No. 11-CV-1368 (NGG) (VVP), 2014 U.S. Dist. LEXIS 44883, at *9 (E.D.N.Y. Mar. 29, 2014)). The focus of this inquiry is on the "special circumstances," as "[n]o meaningful guidelines of broad applicability are discernible from the reported decisions as to the appropriate measure for an award," and thus "incentive awards have [] varied in both methodology underlying their calculation, and their size." *In re AOL Time Warner ERISA Litig*., No. 02 Civ. 5583 (SWK), 2007 U.S. Dist. LEXIS 79545, at *9-10 (S.D.N.Y. Oct. 26, 2007) (citations omitted). Although not an exhaustive list, these special circumstances include: (1) the personal risk, if any, that the named plaintiff incurred in the litigation;[6] (2) the time and effort expanded by the named plaintiff in assisting with the case; (3) any other burdens sustained by the named plaintiff by lending themselves to the prosecution of the claim; (4) the ultimate recovery; and (5) the proportionality of the named Plaintiff's service award in relation to the payment that the other class members will receive. *See e.g.*, *Babcock*, 2017 U.S. Dist. LEXIS 44548, at *21-22 (listing factors); *Frank v. Eastman Kodack Co*., 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (listing factors). Further, even if the parties agree to an amount, the Court may still reduce the award in accordance with these factors. *See e.g.*, *Torres*, 2014 U.S. Dist. LEXIS 44883, at *9 (quoting *Sheppard v. Consol. Edison Co. of N.Y., Inc*., No. 94-CV-403 (JG), 2002 U.S. Dist. ELXIS 16314, at *6 (E.D.N.Y.

---

[6] Named plaintiffs in certain class actions, such as "a present or past employee of the defendant [in an employment discrimination lawsuit] exposes himself to significant personal risk and retaliation by serving as the name and face of a class action. By contrast, class actions in other contexts," such as an FDCPA action, "do not carry the same risk as the named plaintiff." *Torres*, 2014 U.S. Dist. LEXIS 44883, at *9. Indeed, Plaintiff's counsel in this case has not described any personal risk or hardship that Zaslavskiy faced by being the named Plaintiff in this action.

Aug. 1, 2002)) (reducing an agreed-upon service award when it was "grossly disproportionate to the compensation to be paid to the absent class members the plaintiffs seek to represent.'")[7]; *Babcock*, 2017 U.S. Dist. LEXIS 44548, at *22 (reducing a service award from $3,500 to $2,500 where, although the named plaintiff attended a settlement conference, there was "no showing that the [named plaintiff] bore any risk in prosecuting this action, incurred out-of-pocket expenses or devoted a significant mount of time on tasks related to" the litigation.).

Here, under the proposed settlement, Zaslavskiy would receive an award of $4,000 (Dkt. No. 41 ¶ 2.03): $3,000 for his service award and $1,000 in statutory damages recoverable under § 1692(k). (Dkt. No. 34 at 5). In their supplemental brief,[8] the parties claim this amount is appropriate because Zaslavskiy lent his name to the litigation, provided information concerning the communication he received from Defendant, responded to discovery, and was "prepared to appear in Court for the scheduled settlement conference." (*Id*. at 5-6). The parties do not claim that Zaslavskiy incurred any risk by being the named Plaintiff; nor do they suggest that he suffered any out-of-pocket expenses, or devoted a significant amount of time to the prosecution of this case, particularly since he was not deposed. Although Zaslavskiy's participation did contribute to a successful class-action lawsuit, the actions credited to him—communicating with his attorney, providing basic documentation, responding to discovery, and preparing for a court appearance

---

[7] Regarding proportionality, in FDCPA cases where the named Plaintiff has not provided substantial time or resources to the litigation—for example, by not being deposed—courts in this Circuit have approved service awards up to approximately thirty-three times that of an individual class members' award. *See e.g.*, *Bitzko v. Weltman,* No. 17-CV-458 (BKS) (DJS), 2021 U.S. Dist. LEXIS 149596, at *18 (N.D.N.Y. Aug. 10, 2021) (awarding a service award of $1,000, approximately five times greater than the individual class member award); *Esposito v. Nations Recovery Ctr., Inc.*, No. 18-CV-2089 (VLB), 2021 U.S. Dist. LEXIS 98231, at *25 (D. Conn. May 25, 2021) (awarding a service award of $3,000, approximately 8 times greater than the individual class member award); *Garland v. Cohen & Krassner*, No. 08-CV-4626, 2011 U.S. Dist. LEXIS 136622, at *38 (E.D.N.Y. Nov. 29, 2011) (awarding $3,000 to the named Plaintiff for "statutory damages and for her role in the litigation," approximately 33 times greater than the individual class member award).

[8] On September 29, 2020, Judge Gold ordered Plaintiff to "include a detailed statement of the actions taken and time spent by plaintiff that might warrant approving such a substantial award." (Order dated 9/29/2020).

14

which he did not attend—are standard practices for a plaintiff in any case, and are not in and of themselves a "special circumstance" that would warrant an award fifty-three times[9] the amount to be paid to the other class members. Accordingly, I respectfully recommend that Zaslavskiy's award be reduced to $2,500, in accordance with awards given to plaintiffs that had comparable involvement in other FDCPA cases in this Circuit. *See e.g.*, *Babcock*, 2017 U.S. Dist. LEXIS 44548, at *22; *Bitzko,* 2021 U.S. Dist. LEXIS 149596, at *18; *Esposito*, 2021 U.S. Dist. LEXIS 98231, at *25; *Garland*, 2011 U.S. Dist. LEXIS 136622, at *38. I further recommend that the difference between the requested and awarded amount be added to the class settlement fund, for a total settlement fund of $41,833.34,[10] to be distributed equally among the 510 class members whose notices were successfully mailed.

### 4.  Equitable Treatment of Class Members – Rule 23(e)(2)(D)

After an adequacy assessment, Rule 23(e)(2)(d) finally requires the Court to consider whether the proposed settlement "treats class members equitably relative to each other." Consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." 2018 Advisory Committee Notes to Fed. R. Civ. P. 23(e)(2)(D).

Here, the class members will be treated equitably by receiving a pro rata share of the recovery. *See, e.g., Christine Asia Co. v. Yun Ma*, No. 15-MD-02631 (CM) (SDA), 2019 U.S. Dist. LEXIS 179836, at *15 (S.D.N.Y. Oct. 16, 2019) (finding this factor satisfied where claimants would each "receive their pro rata share" of the settlement fund); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp.

---

[9] $4,000 (the proposed award to Zaslavskiy) / $75 (the amount to be paid to the other class members) = 53.
[10] $40,333.34 (original class amount) + $1,500 (difference in fee award and requested award) = $41,833.34.

3d 650, 667 (S.D.N.Y. 2015) (finding that a pro rata allocation plan "appear[ed] to treat the class members equitably . . . and has the benefit of simplicity"). Further, in a case such as this, "where any recovery would consist of statutory damages, there is no reason to believe that any class member would likely recover more than any other if the claims of class members were adjudicated individually." (Report at 19). Thus, Rule 23(e)(2)(D) weighs in favor of final approval.

### 5. Remaining *Grinnell* Factors

#### a. The Second Factor

The second *Grinnell* factor asks the Court to consider the reaction of the class to the settlement. "Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of settlement." *Godson v. Eltman, Eltman, & Cooper, P.C.*, 328 F.R.D. 35, 55 (W.D.N.Y. 2018) (quoting *In re Sinus Buster Prods. Consumer Litig.*, No. 12-CV-2429 (ADS) (AKT), 2014 U.S. Dist. LEXIS 158415, at *20-21 (E.D.N.Y. Nov. 10, 2014)); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("the absence of substantial opposition is indicative of class approval.")

Here, the notice of the settlement was successfully sent to 510 of the 553 class members. (Mem. for Final Approval at 1). No class member requested exclusions from, or objected to, the settlement. (*Id*. at 10). Therefore, this factor weighs heavily in favor of final approval. *See e.g., Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452 (RLE), 2008 U.S. Dist. LEXIS 23016, at *4 (S.D.N.Y. Mar. 24, 2008) (finding that "[t]he reaction of the class to the settlement was positive, which favors approval of the settlement," where none of the 245 individuals "opted out of or objected to the proposed settlement.")

16

b.  The Third Factor

The third *Grinnell* factor asks the Court to consider the stage of the proceedings and the amount of discovery completed. The relevant inquiry is whether "the plaintiffs 'obtained sufficient information through discovery to properly evaluate their case and to assess the adequacy of any settlement proposal.'" *In re Advanced Battery Techs. Secs. Litig*., 298 F.R.D. 171, 177 (S.D.N.Y. 2014) (quoting *Bellifemine v. Sanofi-Aventis U.S. LLC*, No. 07 Civ. 2207 (JGK), 2010 U.S. Dist. LEXIS 79679, at *3 (S.D.N.Y. Aug. 6, 2010)). Here, the parties obtained "significant information concerning the parties, the claims, and the Defendant's net worth during discovery." (Dkt. No. 33 at 17). Thus "the parties had a clear understanding of the legal and factual issues in the case as well as the strengths and weaknesses of their respective positions." (*Id*.). Therefore, although the parties did not engage in more extensive discovery, such as depositions, the information gathered by the parties was sufficient to way the risks of litigation and negotiate a reasonable resolution of this lawsuit. Accordingly, this factor weighs in favor of settlement.

c.  The Seventh Factor

The seventh *Grinnell* factor considers Defendant's ability to withstand a greater judgment.[11] "This factor stands for the proposition that if a defendant could not withstand a greater judgment than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate." *In re Montero*, No. 17-CV-1105 (LDH) (ST), 2021 U.S. Dist. LEXIS 153192, at *35-36 (E.D.N.Y. Aug. 13, 2021). However, "the ability of defendants to withstand greater judgment does not alone suggest the settlement is unfair or unreasonable." *In re Virtus Inv. Partners, Inc*., No. 15-CV-1249 (WHP), 2018 U.S. Dist. LEXIS 205304, at *8

---

[11] The parties did not address this factor in their papers, other than to say that this factor was satisfied. (Dkt. Nos. 33 at 17; 43 at 10).

(S.D.N.Y. Dec. 4, 2018) (quoting *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. 12-CV-2389 (RWS), 2015 U.S. Dist. LEXIS 152668, at *15 (S.D.N.Y. Nov. 9, 2015)).

Here, the Settlement Agreement provides that the class fund will be $40,333.34 (Dkt. No 41 ¶ 2.01; Mem. for Final Approval at 1); and each class member will receive $79.08 (Mem. for Final Approval at 3.) Even if the class could possibly achieve a greater recovery at trial, this fact does not preclude the Court from finding that the settlement is reasonable and appropriate for approval. *In re Luxottica Group S.p.A. Secs. Litig.*, 233 F.R.D. 306, 316 (E.D.N.Y. 2006). The settlement agreement at issue was negotiated at arm's length, provides a meaningful benefit to the class, disincentives Defendant from committing future statutory violations, and as discussed below, is within the range of reasonableness. Accordingly, this factor weighs in favor of settlement approval. *See id*.

### d. The Eighth and Ninth Factors

The two final *Grinnell* factors are typically considered together, and ask the Court to consider the range of reasonableness of the settlement fund in light of the best possible recovery and all the attendant risks of litigation. *See Cymbalista v. JPMorgan Chase Bank, N.A.*, No. 20-CV-426 (RPK) (LB), 2021 U.S. Dist. LEXIS 99093, at *28 (E.D.N.Y. May 25, 2021). "The determination of the reasonableness of a particular settlement amount 'does not involve the use of a 'mathematical equation yielding a particularization sum.'" *Hernandez v. Immortal Rise, Inc*., 306 F.R.D. 91, 101 (E.D.N.Y. 2015). Rather, "there is a range of reasonableness with respect to a settlement — a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Id*. (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). In fact, as was noted in *Grinnell*, 495 F.2d at 455 n.2 "there is no reason, at least in theory, why a satisfactory settlement could not

amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Esposito*, 2021 U.S. Dist. LEXIS 98231, at *25.

Here, the proposed class settlement fund of $40,333.34 is slightly less than half of $82,599.14, the maximum recovery under the FDCPA. 15 U.S.C. § 1692k(a)(2)(B). As previously discussed, *see* Section 3(a), Plaintiff would need to overcome "several hurdles" to obtain a favorable outcome. *Mikhlin*, 2021 U.S. Dist. LEXIS 66719, at *15. And, even if Plaintiff did succeed at trial, maximum recovery is not guaranteed. In fact, recovery may be less than is provided under the proposed settlement agreement. *See Diaz v. FCI Lender Servs.*, No. 17 Civ. 8686 (AJN), 2020 U.S. Dist. LEXIS 141314, at *13 (S.D.N.Y. Aug. 7, 2020) (noting that "courts are not always as generous to FDCPA plaintiffs.") (collecting cases). Additionally, further litigation would increase attorney's fees and further delay payment to class members. Accordingly, the eighth and ninth factors weigh in favor of settlement.

In sum, under both the Rule 23(3)(2) factors and the *Grinnell* factors, I find the proposed settlement to be fair, reasonable, and adequate, with the exceptions noted below. Accordingly, I respectfully recommend that the proposed settlement be given final approval, provided that: (1) the service award be reduced to $2,500; (2) the difference between the requested and awarded service award amount be added to the class settlement fund, for a total settlement fund of $41,833.34,[12] to be distributed equally among the 510 class members whose notices were successfully mailed; and (3) the attorney's fee award be reduced to $16,500[13], for the reasons discussed *infra* Point III.

---

[12] $40,333.34 (original class amount) + $1,500 (difference in fee award and requested award) = $41,833.34.

[13] $16,100 in attorney's fees + $400 in costs = $16,500.

III.    Award of Attorney's Fees and Costs

The FDCPA authorizes an award of reasonable attorney's fees and costs to be determined by the Court. 15 U.S.C. § 1692k(a)(3). Here, Class Counsel has requested an attorney's fee award of $22,166.66, (Dkt. No. 42 ("Mem. for Att'y Fees") at 1), the maximum amount permissible under the settlement agreement (Dkt. No. 32-1 ¶ 1.04). This award is separate from the class settlement fund and comes at no cost to the class. (Mem. for Att'y Fees at 3). The parties do not dispute Plaintiff's entitlement to attorney's fees and costs, or the amount requested. (Dkt. No. 32-1 ¶ 1.04). Therefore, the only question before the Court is whether the requested amount is reasonable. *See Bannister v. Berkman, Henoch, Peterson & Peddy, P.C.*, No. 20-CV-1810 (MKB) (AKT), 2021 U.S. Dist. LEXIS 139371, at *6 (E.D.N.Y. July 25, 2021); *see also Torres*, 2017 U.S. Dist. LEXIS 8824, at *2 ("in approving the settlement of a class action, the court has the responsibility to [e]nsure that the terms of the settlement are fair and reasonable, including the amount of fees and costs obtained by class counsel")

"The Court has discretion to determine the amount of attorneys' fees appropriate to satisfy a fee award." *See Bannister*, 2021 U.S. Dist. LEXIS 139371 at *6 (citing *Hensley v. Eckerhart*, 431 U.S. 424, 437 (1983)). In FDCPA actions, courts in the Second Circuit use the "lodestar"[14]—the product of a reasonable hourly rate multiplied by the reasonable number of hours required by the case—to determine the "presumptively reasonable fee." *Datiz v. Int'l Recovery Assocs.*, No. 15-CV-3549 (DRH) (AKT), 2020 U.S. Dist. LEXIS 45693, at *23 (E.D.N.Y. Mar. 12, 2020); *Dowling v. Kucker Kraus & Bruh, LLP*, No. 99-CV-11958 (RCC), 2005 U.S. Dist. LEXIS 11000, at *19

---

[14] In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany County Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008), the Second Circuit noted that the term "presumptively reasonable fee" was more appropriate than "lodestar." However, the Second Circuit has noted that "[w]hile the *Arbor Hill* panel indicated its preference for abandonment of the term 'lodestar' altogether, the approach adopted in that case is nonetheless a derivative of the lodestar method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 n.2 (2d Cir. 2010),

(S.D.N.Y. June 6, 2005) (the lodestar is calculated by "multiplying the number of hours reasonably expended by counsel on the litigation by a reasonable hourly rate."); *see also Esposito*, 2021 U.S. Dist. LEXIS 98231, at *15 (explaining the process of calculating a reasonable attorney's fee after *Arbor Hill*). Once the lodestar has been calculated, the Court may, in its discretion, adjust this amount in consideration of multiple factors, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation . . .; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Torres*, 2017 U.S. Dist. LEXIS 8824, at *4 (quoting *Goldberger*, 209 F.3d 43 at 50); *see also Adorno v. Port Auth. of N.Y. & N.J.*, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010).

To determine if the requested amount in this case is reasonable, I must calculate the presumptively reasonable fee. To do this, I will first calculate reasonable attorney's fees and costs, and if this amount is less than the requested amount, determine whether an adjustment is appropriate.

### A. Reasonable Attorney's Fees Calculation

I must first determine the reasonable attorney's fee in this case. Here, Plaintiff was represented by two firms: Edleman, Combs, Lautturner & Goodwin, LLC ("ECLG") and Cohen & Mizrahi, LLP ("CM") (collectively, "Class Counsel"). ECLG submitted time records detailing the date and time spent working on the case, as well as a description of the work performed. (Dk.t No. 42-1 ("Edelman Decl.")). However, no records were provided for CM. Attorneys Edleman and Cohen also submitted declartions outlining the qualifications of the individuals who billed for this matter at their respective firms. (Edelman Decl.; 42-2 ("Cohen Decl.")). These documents form the basis of the Court's analysis. The hourly rates and hours billed by Class Counsel are summarized below:

| Employee's Name | Law Firm | Position | Hours Bill | Hourly Rate Requested | Total |
|---|---|---|---|---|---|
| Edelman | ECLG | Partner | 3.1 | $700/hour | $2,170 |
| Combs | ECLG | Partner | 1.8 | $700/hour | $1,260 |
| Kolbus | ECLG | Partner | 9.8 | $500/hour | $4,900 |
| Hardy | ECLG | Partner | 56.70 | $450/hour | $25,515 |
| Paralegals[15] | ECLG | Paralegal | 21.5 | $125/hour | $2,687.5 |
| Nissanian | CM | Paralegal | 2 | $200/hour | $400 |
| Cohen | CM | Partner | 5.2 | $400/hour | $2,080 |
| | | **TOTAL** | 100.1 | **TOTAL** | $39,012.5[16] |

(Dkt. Nos. 42 at 5; Edelman Decl. at 117; Cohen Decl. at 2).

1. <u>Reasonable Hourly Rate</u>

The Court must first determine a reasonable hourly rate for each attorney. "In determining reasonable hourly rates, the Court considers this Circuit's adherence to the "forum rule," which states that a district court should generally use the prevailing hourly rates in the district where it sits. *Bannister v. Berkman, Henoch, Peterson & Peddy, P.C.*, No. 20-CV-1810 (MKB) (AKT), 2021 U.S. Dist. ELXIS 139371, at *7 (E.D.N.Y. July 25, 2021) (citing cases). The Second Circuit has also instructed district courts to consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93(1989). The twelve *Johnson* factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case;

---

[15] Twelve paralegals at ECLG worked on this matter. They all charged the same hourly rate, and their individual qualifications were not addressed in the attorney declarations. Therefore, for efficiency, their work will be considered together.

[16] Although class counsel only seeks an award of $22,166.66 "in the exercise of billing judgment," the Court will use the above hours and rates to begin the lodestar calculation. (Mem. for Att'y Fees at 2).

(11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Bannister*, 2021 U.S. Dist. ELXIS 139371, at *7 (citing *Arbor Hill concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d. Cir. 2007)).

In the Eastern District of New York, the prevailing rates are $300-$450 per hour for partners, $200-$300 per hour for senior associates, $100-$200 per hour for junior associates, and $70-$100 per hour for paralegals. *Rudler*, 2020 U.S. Dist. LEXIS 15923, at *33 (collecting cases); *McMahon-Pitts v. Sokoloff*, No. 15-CV-4975 (JFB), 2017 U.S. Dist. LEXIS 37237 at *9 (E.D.N.Y. Mar. 15, 2017) (collecting cases). However, rates in FDCPA cases "regularly fall on the lower end of this range" and "courts rarely award rates greater than $350 for even the most experienced attorneys." *Burkett v. Houslanger & Assocs., PLLC*, No. 19-CV-2285 (EK) (JO), 2020 U.S. Dist. LEXIS 131512, at *6 (E.D.N.Y. July 23, 2020). "Of course, in light of the numerous factors that courts in this circuit consider to determine a reasonable hourly rate, 'the range of 'reasonable' attorney fee rates in this district varies depending on the type of case, the nature of the litigation, the size of the firm, and the expertise of its attorneys." *McMahon-Pitts*, 2017 U.S. Dist. LEXIS 37237 at *9 (quoting *Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205 (CLP), 2012 U.S. Dist. LEXIS 73456, at *30 (E.D.N.Y. Apr. 30, 2012)). The hourly rate for each attorney is addressed in turn:

### a. Daniel Edelman, Esq.

Edelman has been practicing law since 1976 and has worked as a partner at multiple firms since 1982. (Edelman Decl. at 1). His practice focuses primarily on consumer protection litigation, through both class and individual actions. (*Id*.). His work on consumer protection topics, including the FDCPA, has been widely published in academic books, law journals, and other legal publications. (*Id*. at 1-2).

Edelman charged an hourly rate of $700 per hour. (Edelman Decl.). According to Edelman, this rate, like the rates for all attorneys at ECLG, are "consistent with the rates charged by attorneys of comparable experience and expertise in the Chicago area." (Edelman Decl. at 23). It is also "the same as the regular current rates charged for [his] services in other contingent matters in class action litigation and also consistent with the fees charged to occasional hourly paying clients." (*Id*. at 23). Edelman cited to multiple decisions in other districts, but not the Eastern District of New York, awarding him this hourly rate. (*See* Edelman Decl. at 24-29).

Edelman's expertise in this area of law is impressive, and, combined with his 45-years of experience, warrants a rate at the higher end of the fee range. However, Edelman has not provided any reasoning to justify a rate $250 greater than the maximum typically awarded to experienced partners in this district.

Additionally, consideration of the *Johnson* factors does not warrant such a drastic deviation from the typical hourly rates. As Class Counsel noted in their motion, this case involved a "FDCPA letter violation," (Mem. for Att'y Fees at 5). Although "class lawsuits are inherently complex," (Mem. for Att'y Fees at 5), Class Counsel does not claim that this case was particularly laborious, involved novel issues of law or a higher level of skill to litigate, nor do they claim that this case was particularly "undesirable" or taken on at the sacrifice of other cases.

As previously noted, this district rarely awards rates greater than $350 per hour in FDCPA cases, even for the most experienced attorneys. *Burkett*, 2020 U.S. Dist. LEXIS 131512, at *6; *see e.g.*, *Razilova v. Halstead Find. Serv. LLC*, No 18-CV-1668 (RRM) (PK), 2019 U.S. Dist. LEXIS 34176, at *7 (E.D.N.Y. Mar. 1, 2019) (reducing fees of a partner with over 20 years of experience in an FDCPA case from $500 to $350 per hour and noting that "in recent years, decisions in this District have determined reasonable hourly rates in FDCPA cases at approximately $300-$350 for

partners."), *adopted by* 2019 U.S. Dist. LEXIS 50505; *Gonzalez v. Healthcare Recovery Mgmt. Inc.*, No. 13-CV-1002 (JG), 2013 U.S. Dist. LEXIS 129115, at *4 (E.D.N.Y. Sept. 10, 2013) ("in FDCPA cases, courts in the Eastern District of New York regularly award experienced attorneys hourly rates ranging from $250 to $350.") (collecting cases).

Accordingly, a rate of $350 per hour is appropriate. *See e.g., Dagostino v. Computer Credit, Inc.*, 238 F. Supp. 3d 404, 412 (E.D.N.Y. 2017) (finding $350 per hour a reasonable rate for a partner that had tried hundreds of cases to verdict, had extensive experience in FDCPA litigation, and involved a case that "did not present any novel or difficult questions of law and did not require a high level of skill."); *Razilova*, 2019 U.S. Dist. LEXIS 34176, at *7 (recommending founding partners, who concentrated on FDCPA litigation and had more than seventeen years' experience, be awarded hourly rate of $350), *adopted by* 2019 U.S. Dist. LEXIS 50505 (E.D.N.Y. Mar. 26, 2019); *Larsen v. JBC Legal Group, P.C.*, 588 F. Supp. 2d 360, 364 (E.D.N.Y. 2008) (finding in an FDCPA case that $300 per hour was a reasonable rate for an attorney with seventeen years of experience, including "significant experience in consumer protection and consumer fraud litigation"); *Baruch v. Healthcare Receivable Management, Inc.*, No. 05-CV-5392 (CPS) (JMA), 2007 U.S. Dist. LEXIS 80429 at *5 (E.D.N.Y. Oct. 30, 2007) (finding in an FDCPA case that $350 per hour was a reasonable for an attorney who had practiced law for nineteen years).

### b. Cathleen Combs, Esq.

Combs has been an attorney since 1976 and a partner at ECLG since 1991. (Edelman Decl. at 3). She is an experienced litigator and a frequent lecturer on consumer protection topics. (*Id*. at 4).

Combs charged a rate of $700 per hour. Although Combs is an experienced litigator in consumer protection topics, this work has not been specialized in FDCPA litigation, as is common

among attorneys that are awarded the highest fees in FDCPA cases. *See e.g.*, *Razilova*, 2019 U.S. Dist. LEXIS 34176, at *7; *Gonzalez*, 2013 U.S. Dist. LEXIS 129115, at *4. Additionally, for the reasons described above, consideration of the *Johnson* factors does not warrant a higher rate. Accordingly, a rate of $300 per hour is appropriate.

### c. Heather Kolbus, Esq.

Kolbus has been practicing law since 2002. (Edelman Decl.). The declaration contains only her graduation dates and a list of her reported cases. There is no description of her qualifications or experience.

When, as here, a court "lacks relevant background and/or experience information for an attorney," it is appropriate to reduce the attorney's fees on that basis. *Sentry Ins. A Mut. Co. v. Brand Mgmt.*, No. 11-CV-3966 (ENV), 2013 U.S. Dist. LEXIS 82840, at *8 (E.D.N.Y. June 12, 2013); *see also Carco Grp., Inc. v. Maconachy*, 718 F.3d 72 (2d Cir. 2013) (noting that when an attorney affidavit is provided but omits background information on certain lawyers, it is within court's discretion to deny or modify those fees). Specifically, when, as here, an attorney is identified as a "partner" but no additional information is provided regarding their qualifications, it is appropriate to award the attorney the rate at the lowest level of the partner range. *See Sentry*, 2013 U.S. Dist. LEXIS 82840, at *8. Since Kolbus is identified as a partner in the billing records, but no information regarding her qualifications is provided, a rate of $250 per hour is appropriate.

### d. Tiffany Hardy, Esq.

Tiffany Hardy is identified only as a "former partner" in Edelman's declaration (Edelman Decl. at 28). There is no information provided regarding her qualifications whatsoever. However, rates that she had been awarded in previous cases was provided. (*See id.* at 23, 26). Since Hardy is

identified as a partner in the billing records, but no information regarding her qualifications is provided, a rate of $250 per hour is appropriate. *See Sentry*, 2013 U.S. Dist. LEXIS 82840, at *8.

### e.  ECLG Paralegals

The billing records reflect the work of twelve different people with the title "paralegal," and indicate that work performed by them was charged at a rate of $125 per hour. The qualifications and experience of these individuals are not provided.

Courts in this District have held that a range of $70 to $100 per hour is a reasonable fee for a paralegal in a FDCPA case. *See Rudler*, 2020 U.S. Dist. LEXIS 15923, at *35; *McMahon-Pitts*, 2017 U.S. Dist. LEXIS 37237 at *9 (collecting cases). "Moreover, where an applicant fails to provide background and experience information that would enable a court to assess the reasonableness of a requested rate, a court may use its discretion to award fees at a lower rate." *See Rudler*, 2020 U.S. Dist. LEXIS 15923, at *35. In the absence of any relevant information about the paralegals, and considering the prevailing rates for paralegals in this district, a rate of $70 per hour is appropriate.

### f.  Cohen and Nissanian

Class Counsel did not provide any time records for work allegedly done by Cohen and Nissanian.[17] Accordingly, I respectfully recommend that they not be awarded attorney's fees for their work. *Isakova v. Klein*, No. 19-CV-5221 (KAM) (ST), 2021 U.S. Dist. LEXIS 109208, at *7 (E.D.N.Y. June 10, 2021) (citing *Scott v. City of New York*, 626 F.3d 130, 133-34 (2d Cir. 2010)). ("The absence of contemporaneous records precludes any fee award in all but the most

---

[17] In his declaration, Cohen states that "the time and services provided by Class Counsel for which fees are sought in the petition are reflected in contemporaneously maintained records of each of the firms." (Cohen Decl. ¶ 8). However, Cohen does not provide any time records for his firm, nor is any work credited to him or Nissanian in the records submitted by ECLG. (*See* Edelman Decl.).

extraordinary of circumstances."); *see, e.g., Rudler v. Houslanger & Assocs., PLLC*, No. 18-CV-7068 (SFJ) (AYS), 2020 U.S. Dist. LEXIS 15923, at *33 (E.D.N.Y. Jan. 29, 2020); *Hugee v. Kimso Apartments, LLC*, 852 F. Supp. 2d 281, 298 (E.D.N.Y. 2012) ("the burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed.").

### 2. Reasonableness of Hours Billed

The Court must next determine the number of hours reasonably expended on this litigation. This amount is calculated by "taking the hours actually extended less any 'excessive, redundant, or otherwise unnecessary time.'" *Goode v. Vision Fin. Corp.*, No. 14-CV-4272 (RER), 2015 U.S. Dist. LEXIS 101267, at *13 (E.D.N.Y. May 7, 2015) (quoting *Hensley*, 461 U.S. at 433-34)). "Where the hours are excessive, duplicative, unnecessary, or poorly documented, the court may reduce the award accordingly." *Tito v. Rubin & Rothman, LLC*, No. 12-CV-3464 (JMA), 2014 U.S. Dist. LEXIS 35553, at *9 (E.D.N.Y. Mar. 18, 2014); *see also Dagostino v. Computer Credit, Inc.*, 238 F. Supp. 3d 404, 416-17 (E.D.N.Y. 2017) ("the Court has discretion to reduce attorneys' fees where billing records contain vague entries, block entries, claims for excessive amounts of time, and other issues.") "In considering a reduction in an attorney's fee award, a court need not make item-by-item findings" and may instead "make across-the-board percentage cuts in hours as a practical means of trimming fat from a fee application." *Tenecora v. Ba-Kal Rest. Corp.*, No. 18-CV-7311 (DRH) (AKT), 2020 U.S. Dist. LEXIS 226567, at *102 (E.D.N.Y. Nov. 30, 2020); *see also Francois v. Mazer*, 523 F. App'x 28 (2d Cir. 2013) (upholding a 40% across the board fee reduction).

Having reviewed the time entries, there are several aspects of the records that are concerning and justify a percentage reduction in the total hours.

a. <u>Excessive Billing for Email Correspondence</u>

The first item that is concerning is the number of hours billed for email correspondence. A fee reduction is justified when the billing records are "replete with reference to reading and writing emails, many of which took more time than would seem necessary." *Tito*, 2014 U.S. Dist. LEXIS 35553, at *10 (reducing requested attorney's fees by 30%). Particularly concerning in this case is that at least 20 hours—nearly twenty percent of the total hours allegedly worked—were billed for reading and responding to emails, and most of this billing came from partners.

For example, Partner Tiffany N. Hardy, identified as "TNH" in the billing records, billed 56.70 hours in this matter. (Edelman Decl. at 117). Of her hours billed, 11.5 hours were for email correspondence. Many of these entries are in 0.3 and .4 increments, and their corresponding entry descriptions fail to explain why a communication that "likely took one or two minutes, if not less" *Goode*, 2015 U.S. Dist. LEXIS 101267, at *13, were represented as taking 18 and 24 minutes, respectively.[18]

Additionally, Partner Heather Kolbus, identified as "HAK" in the billing records, billed 9.8 hours in this matter. (Edelman Decl. at 117). Of those hours billed, at least 5.1 hours were for email correspondence, recorded in 0.1 and 0.2 hour increments. The entry descriptions also fail to justify why a Partner, such as Kolbus, needed 12 minutes to complete a task such as "email[ing] co-counsel re[garding] fee petition and [class notice]" (Edelman Decl. at 110, Entry Dated 3/3/2021).

Accordingly, the time billed for these tasks excessive, especially given the attorney's experience as partners.

---

[18] Some of these entries include: on 3/25/2019, TNH billed 0.4 hours for "emails to and from oc re status report and settlement info"; on 6/12/2019 she billed 0.4 hours for "emails to and from oc re extending deadline to respond to discovery and deadline to amend pleadings"; on 6/27/2019 she bill 0.2 hours for "emails to and from oc re request for an extension of time"; and then on the next day, 6/28/2019, billed 0.3 hours for "emails to and from oc re request for an extension of time." (Edelman Decl. at 97-98).

b.   Billing For Other Administrative Work

The second item that is concerning is that the paralegals billed almost exclusively for clerical tasks. "Generally, clerical and secretarial services are considered part of overhead and are not charged to clients." *N.Y. City Dist. Council of Carpenters v. Trs. Of the N.Y. City. Dist. Council of Carpenters Welfare Fund*, No. 16-CV-3429 (ARR) (ST), 2018 U.S. Dist. LEXIS 123903, at *26 (E.D.N.Y. July 23, 2018) (quoting *Putnam Leasing Co., Inc. v. Fields*, No. 05-CV-141 (RJD) (RML), 2007 U.S. Dist. LEXIS 58794, at *6 (E.D.N.Y. June 27, 2007). Clerical tasks include things such as filing papers, printing and mailing documents, updating a client's file, transcribing voice messages, and other computer related tasks. *See Bosket v. NCO Fin. Sys*., No. 11-CV-678 (LEK) (DEP), 2012 U.S. Dist. LEXIS 132239, at *12 (N.D.N.Y. Sept. 17, 2012); *Kowal v. Andy Contr., Inc*., No. 05-CV-576 (SMG), 2008 U.S. Dist. LEXIS 73637, at *11-12 (E.D.N.Y. Sept. 25, 2008); *compare with Resivo Guardado v. Precsiion Fin. Inc.*, No. 04-CV-3309 (JS) (AKT), 2008 U.S. Dist. LEXIS 47881, at *19-20 (E.D.N.Y. Mar. 9, 2008) (tasks such as preparing trial exhibits are comparable to work done by a paralegal and are compensable).

Here, the ECLG paralegals billed for many clerical tasks, such as organizing a binder, "logging and filing" (there was no description provided of this task), updating a letterhead and adding signature blocks to a document, saving documents, leaving voicemails, and mailing documents. (Edelman Decl. at 96-110). In fact, at least 5.4 hours were spent "logging and filing" and "saving" documents. These tasks are clerical in nature and part of normal firm overhead. *Kowal*, 2008 U.S. Dist. LEXIS 73637, at *13 (reducing requested fees by 15%). Accordingly, they are not compensable.

### c.  Block Billing

The third item that is concerning is ECLG's use of block billing. "Block-billing is the practice of aggregating numerous tasks into one billing entry" and "make it difficult, if not impossible, for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Nicaisse v. Stephens & Michaels Assoc.*, No. 14-CV-1570 (JS) (GRB), 2016 U.S. Dist. LEXIS 76079, at *22-23 (E.D.N.Y. June 6, 2016) (quoting *Trustees of Empire State Carpenters Annuity Apprenticeship, Labor-Mgmt Cooperation, Pension & Welfare Funds v. Penco United, LLC*, No. 13-CV-4745 (SJF)(AKT), 2015 U.S. Dist. LEXIS 48979, at *5 (E.D.N.Y. Apr. 14, 2015)). "When billing records reveal repeated use of block billing, courts have used percentage reductions as a practical means of trimming fat from a fee application." *Penberg v. HealthBridge Management*, No. 08-CV-1534 (CLP), 2011 U.S. Dist. LEXIS 31022, at *9 (E.D.N.Y. Mar. 22, 2011).

Here, Hardy block-billed on several occasions. On 8/9/2019, for example, she billed 0.6 hours to "conf CV re settlement demand-review and revise demand email to DC re proposed demand." (Edelman Decl. at 98) Therefore, this entry includes three distinct tasks: (1) a conference; (2) reviewing and revising a document; and (3) sending an email. She again block-billed on 1/22/2020, 2/12/2020, and 4/6/2020 (*id*. at 98-103).

### d.  Redacted Descriptions

Finally, it is concerning that ECLG redacted the descriptions of several entries. The descriptions of 15 separate time entries, totaling 5 hours of billed work, are redacted. Some of the entries, such as the 0.5 hours billed on 11/15/2019 by "CV" are completely redacted. Accordingly, the Court is unable to determine whether the hours billed for these entries are reasonable.

Given the excessive billing for emails, numerous vague and redacted entries, multiple instances of block billing, and billing for clerical work, a 20% reduction of the billed hours is warranted. *See e.g.*, *Manswell v. Heavenly Miracle Acad. Servs.*, No. 14-CV-7114 (MKB) (SMG), 2017 U.S. Dist. LEXIS 136366 (E.D.N.Y. Aug. 23, 2017) (reducing hours by 20% due to attorney's billing for administrative tasks, block billing, and excessive expenditure of time in default judgment context.

### 3. Presumptively Reasonable Attorney's Fees

Accordingly, the presumptively reasonable attorney's fee in this case, based upon the above adjustments is $16,100, calculated as follows:

| Employee's Name | Law Firm | Position | Reasonable Hours Billed | Reasonable Hourly Rate | Total |
|---|---|---|---|---|---|
| Edelman | ECLG | Partner | 2.5 | $350 | $875[19] |
| Combs | ECLG | Partner | 1.4 | $300 | $420[20] |
| Kolbus | ECLG | Partner | 7.8 | $250 | $1,950[21] |
| Hardy | ECLG | Partner | 45.4 | $250 | $11,350[22] |
| Paralegals | ECLG | Paralegal | 21.5 | $70 | $1,505[23] |
| Nissanian | CM | Paralegal | 1.6 | $0 | $0[24] |
| Cohen | CM | Partner | 4.2 | $0 | $0[25] |
|  |  |  |  | TOTAL | $16,100[26] |

---

[19] 2.5 X $350 = $875

[20] 1.4 X $300 = $390

[21] 7.8 X $250 = $2,070

[22] 45.4 X $250 = $11,350

[23] 21.5 X $70 = $1,505

[24] 1.6 X $0 = $0

[25] 4.2 X $0 = $0

[26] $875 + $420 + $1,950 + $11,350 + $1,505 = $9,387

B.  Reasonable Costs Calculation

Under the plain language of the FDCPA, the prevailing party is also entitled to costs incurred in the action. *See* 15 U.S.C. § 1692k(a)(3); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 95 (2d Cir. 2008). Courts in this Circuit have found different types of litigation costs to be reasonable, including filing fees, service fees, *pro hac vice* admission fees, postage costs, and legal research fees. *See Garcia v. Law Offices Howard Lee Schiff, P.C.*, No. 16-CV-791 (VAB), 2019 U.S. Dist. LEXIS 190535, at n. 4 (D. Conn. Nov. 4, 2019) (collecting cases). However, to be recoverable, the party must submit invoices, receipts, or other documentary evidence for any proposed cost. *Douyon v. N.Y. Med. Health Care, P.C.*, 49 F. Supp. 3d 328, 352 (E.D.N.Y. 2014). If the party fails to do so, the Court may deny the requested costs as it has no way of confirming that these costs were incurred. *E.g., Joe Hand Promotions, Inc. v. Elmore*, No. 11-CV-3761, 2013 U.S. Dist. LEXIS 76926 at *12 (E.D.N.Y. May 29, 2013) (taking judicial notice of the filing fee but declining to award counsel service costs due to absence of documentation).

Here, Class Counsel claim that they have incurred $800.27[27] in costs. (Edelman Decl. at 111-117;  Cohen Decl. at 2). The only document offered to support these costs is an internal record from ECLG. (Edelman Decl. at 110-117). Although this document lists the date and charges incurred for printing, postage, legal research, and *pro hac vice* fees, this document is an internal record, not a receipt. Accordingly, since no documentary evidence was provided to support these costs, they are not recoverable.

The Court may, however, take judicial notice of the $400 filing fee. (Docket Entry 8/22/2018 Receipt Number 0207-10675032); *Joe Hand Promotions,* 2013 U.S. Dist. LEXIS 76926 at *12. Accordingly, an award of $400 in costs is appropriate.

---

[27] $400.27 (fees incurred by ECLG) + $400 filing fee = $800.27 (Dkt. Nos. 42-1 at 117; 42-2 at 2).

C.  Reasonable Attorney's Fee Total

For the reasons set forth above, I find that the attorney's fee award requested by Class Counsel unreasonable. Based on the above calculations, $16,500 is the presumptively reasonable attorney's fee award, which includes $16,100 in attorney's fees and $400 in costs. Class Counsel has provided no reason to increase this amount.[28] As explained above, this case was not laborious for Class Counsel; this specific case was not particularly complex; no novel issues of law were presented; and Class Counsel failed to provide any description of the qualifications or experience for the majority of attorneys that worked on this case. The Settlement agreement provides that the **maximum** amount of attorney's fees that may be awarded is $22,166.66, not that this amount **must** be awarded. (Dkt. No. 41 at ¶ 1.04).

Although the parties may have agreed upon the amount of requested attorney's fees, it is still the responsibility of the Court to ensure that this amount is fair and reasonable. *See Bannister*, 2021 U.S. Dist. LEXIS 139371 at *6 (citing *Hensley v. Eckerhart*, 431 U.S. 424, 437 (1983)).  For the numerous reasons set forth above, the requested amount is not reasonable. Accordingly, I respectfully recommend that the requested attorney's fees award be reduced to **$16,500**.

---

[28] At its discretion, a court may increase the presumptively reasonable fee by applying a multiplier based on factors such as litigation risk, or to reward counsel for obtaining an "exceptional result." *Zimmerman v. Portfolio Recovery Assocs., LLC*, No. 09 Civ. 4602 (PGG), 2013 U.S. Dist. LEXIS 174182, at *36 (S.D.N.Y. Dec. 11, 2013) (quoting *Gross v. Washington Mut. Bank, F.A.*, No. 02 CV 4135 (RML), 2006 U.S. Dist. LEXIS 16975, at *6 (E.D.N.Y. Feb. 9, 2006)). Such an increase, however, should "be awarded [only] in 'rare' and 'exceptional' circumstances." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). This is due to the Court's "longstanding concern for moderation. That concern is amplified by [a] nagging suspicion that attorneys in these [class action] cases are routinely overcompensated for such things as contingency risk." *Zimmerman*, 2013 U.S. Dist. LEXIS 174182, at *36 (quoting *Goldberger*, 209 F.3d at 57). Application of a multiplier in this case would not be appropriate. As previously noted, this case centered around a classic FDCPA letter violation and did not involve any novel or complicated issue of law. (Mem. for Att'y Fees at 5). While the result obtained was favorable, it cannot be labeled as exceptional.

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Plaintiff's motion for final approval of the class action settlement be granted in part, and that Your Honor either: (1) accept the recommendation on the decreased service award and attorney's fees, with the decreased amount of the service award being added to the settlement fund ($41,833.34)[29], with a resulting distribution of $82.03 per class member; or (2) accept the amounts proposed by the parties. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Dora L. Irizarry within fourteen days. Failure to file timely objections may waive the right to appeal the District Court's final order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED.


*Ramon E. Reyes, Jr.*
RAMON E. REYES, JR.
United States Magistrate Judge

Dated: January 5, 2022
Brooklyn, NY

---

[29] This amount does not include the addition of the difference between the requested and awarded attorney's fees.